Sun Coal Corporation, to use, *v.* New Upper Lehigh Coal Company, Inc., Appellant.

Argued January 14, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*T. G. Wadzinski,* with him *Henry A. Gordon,* for appellant.

*O. H. Dilley, M. H. Salsburg* and *Abram Salsburg,* for appellee, were not heard.

548

The plaintiff issued a scire facias upon a mortgage signed by the officers of the defendant company; the receiver of the company intervened and filed an affidavit of defense averring that the mortgage was not executed pursuant to proper corporate action; after hearing testimony the learned court below concluded that the mortgage was a valid and subsisting obligation of the company, and entered judgment for plaintiff for $13,800, with interest, whereupon defendant appealed.

The findings of fact, supported by the evidence, show that the New Upper Lehigh Coal Company, Inc., a close corporation, prior to January 15, 1934, sold coal which it produced to the Sun Coal Corporation, which, from time to time, advanced monies in excess of the amount due for the coal delivered. These advances were made because the company needed additional funds to meet payrolls and commitments made with contractors, all of which was necessary to develop its mines and carry on its business. It requested additional monies, which the Sun Coal Corporation refused to advance unless security was given for not only the money already loaned but for the additional amount sought.

A meeting of the representatives of both companies was held and it was ascertained that there was due from the New Upper Lehigh Coal Company to the Sun Coal Corporation the sum of $9,800. The latter agreed to make an additional loan of $4,000, providing a mortgage and bond was given for the two amounts, $13,800, to secure the payment thereof. The mortgage was prepared and brought to the officers of the defendant corporation by the president and the attorney of the Sun Coal Corporation, the mortgagee. It contained the following recital: "This mortgage is made under and by virtue of a resolution of the Board of Directors of the New Upper Lehigh Coal Company, Inc., (mortgagor herein) duly passed at a meeting thereof duly and legally held on the 15th day of January, 1934." The

minutes of the defendant company contain no record of said resolution, nor of the holding of such a meeting. It appears, however, that on January 15, 1934, certain stockholders of the defendant company, including its officers, holders of a substantial interest of the total number of shares outstanding of the capital stock of said corporation, consented in writing to the execution of the mortgage, which was later signed and delivered by officers of the corporation. On January 22, 1934, the mortgage and bond were assigned to Burling Fuel, Inc., the use-plaintiff, which assignment was duly recorded in the mortgage book of Luzerne County. Later the defendant corporation, by various resolutions and corporate action, admitted the indebtedness of $13,800, for which said bond and mortgage had been given. It does not now deny the execution and delivery of the bond and mortgage, nor that it received in return full consideration therefor, nor does it deny that it has not returned the consideration.

The several assignments of error raise a single question for determination; whether the bond and mortgage are invalid because of the provisions of Article 16, section 7, of the Constitution of Pennsylvania, and of section 309, of the Business Corporation Law of 1933, P. L. 364, both of which provide the method of increasing the indebtedness of a corporation. The truth is these provisions have no application here. The bond and mortgage, it is manifest from the facts of the case, did not increase the indebtedness of the corporation. Although there is little testimony in the record on the point, that of Meyer Silberstein, president of the Sun Coal Corporation, who arranged for the giving of the bond and mortgage, indicates all the money, the $9,800 advanced before January 15, 1934, the date of the mortgage, and the $4,000 advanced at the time of the execution of the mortgage, was to "meet commitments to contractors and payrolls"; and Mr. Dunphey, the secretary of the New Upper Lehigh Coal Company, who

signed the mortgage and participated in its execution, testified that the money was to "finance payrolls and for development work". It would seem therefore that the money was used in the ordinary course of business of the company, in developing its mines and meeting its payrolls. And that the $9,800 previously borrowed had actually been spent for those purposes prior to the giving of the mortgage, and the $4,000 was owing for the same purposes at the time the mortgage was given. It thus appears that there was no increase of indebtedness. The money represented by the mortgage, at the time of its execution, had either already been spent in paying obligations of the company, or was to be spent to cancel indebtedness of the company then existing. As said in *Powell v. Blair,* 133 Pa. 550: "The mortgage did not increase the indebtedness of the corporation; it merely changed its form." See *Ahl v. Rhoads,* 84 Pa. 319. Therefore the prohibition of the Constitution, and of the Business Corporation Law, supra, against increase of corporate indebtedness, except as provided therein, has no application here.

Judgment affirmed.